UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| THOMPSON THRIFT CONSTRUCTION, INC., Plaintiff, | ) | Civil Action No. 5: 13-050-DCR |
| V. | ) | |
| HYMAN PLUMBING COMPANY, Defendant. | ) | **MEMORANDUM OPINION AND ORDER** |

*** *** *** ***

This matter is pending for consideration of Defendant Hyman Plumbing Company's ("Hyman") motion to sever the plaintiff's claims and to transfer venue. [Record No. 10] Hyman contends that, because the Complaint involves "three wholly-independent construction projects," each claim should be severed and transferred to a different venue. [Record No. 10-1, p. 1] Having reviewed this matter, the Court concludes that Plaintiff Thompson Thrift Construction, Inc. ("Thompson") properly joined all of its claims against Hyman. After weighing the factors of prejudice to the parties, juror confusion, and convenience and economy, the Court is not convinced that severance is appropriate. Transferring the case is similarly inappropriate. Therefore, the defendant's motion will be denied.

**I.**

Thompson is an Indiana corporation that provides "material, labor, equipment and supervision for the installation of plumbing systems." [Record No. 1, p. 2] Hyman is "a

plumbing company that operates as a subcontractor on large multi-family residential construction projects nationwide." [*Id.*] According to the Complaint, the parties entered into three agreements under which Hyman would provide services for Thompson, including: (1) the Hamburg Subcontract,[1] executed on or around February 2, 2012, for a project in Lexington, Kentucky; (2) the Indian Lake Subcontract, executed on or around November 15, 2011, for a project in Hendersonville, Tennessee; and (3) the Sienna Plantation Subcontract, executed on or around November 1, 2011, for a project in Missouri City, Texas. [Record No. 1] The Indian Lake and Sienna Plantation Subcontracts contain choice-of-law provisions designating Tennessee and Texas law, respectively, as controlling.

Thompson alleges that Hyman provided defective plumbing work, and failed to complete work on all three projects pursuant to the subcontracts. It further contends that the contracts were terminated after Hyman failed to comply with a Notice of Default which requested that the defendant remedy the deficiencies. As a result, Thompson states that it was required to hire another subcontractor for each project.

Thompson has joined in this action all of its claims against Hyman. In each instance, it seeks compensatory damages for the alleged defective work and breach of contract. However, Hyman argues that each claim should be severed and transferred to the venues where the subcontracts were to be performed. Specifically, it asks that "the claims regarding the Sienna

---

[1] Although Hyman has not filed an Answer, it appears from the motion to sever and transfer that the defendant will assert that there was never "a meeting of the minds" for the Hamburg project. However, the defendant does view the Hamburg Subcontract as a separate project with terms and conditions different from those relating to the other two subcontracts. For purpose of the present motion, the Court will cite to the language of the Complaint when referring to the "Hamburg Subcontract." The parties appear to agree that Kentucky law will be relevant to issues pertaining to this subcontract.

Subcontract [] be transferred to the Southern District of Texas, and the claims regarding the Indian Lake Subcontract [] be transferred to the Middle District of Tennessee."[2] [Record No. 10-1, p. 3]

**II.**

As an initial matter, the Court notes that even where claims are properly joined it may sever any claim against a party. Fed. R. Civ. P. 21. "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). In determining whether separate trials are appropriate, "the court should consider several facts, including the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007). Further, the determination of whether claims should be severed is a discretionary one. *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988) ("The decision of whether to grant severance is committed to the sound discretion of the trial court.").

In addition to the authority to sever claims, the Court has "broad discretion" in ruling on a motion to transfer matters to other venues. *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing,* 406 F. Supp. 2d 751, 754 (E.D. Ky. 2005). When making this determination, the following factors are weighed:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the

---

[2] Under this proposed scenario, the Court would maintain jurisdiction over the Hamburg Subcontract.

> attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Cowden v. Parker & Assoc., Inc.*, No. 5:09-CV-0323-KKC, 2010 WL 715850, at *3 (E.D. Ky. Feb. 22, 2010). In addressing these factors, the Sixth Circuit has indicated that district courts have broad discretion to determine when convenience or the interests of justice make transfer appropriate. *Reese v. CNH Am., LLC*, 574 F.3d 315, 320 (6th Cir. 2009). Although severance of claims and transfer of actions may occur even if venue is proper, a request to sever should be denied if it will result in delay, inconvenience, or added expense to the parties. 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1689 (3d ed. 2013).

## III.

### A. Severance

In addition to the foregoing principles, Rule 18 of the Federal Rules of Civil Procedure provides that a "party asserting a claim . . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18. This rule "proceed[s] upon the theory that no inconvenience can result from the joinder of any two or more matters in the pleadings, but only from trying two or more matters together which have little or nothing in common." Advisory Committee notes to Fed. R. Civ. P. 18. Thus, the rule "provides the parties with great freedom in the joinder of claims." 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1689 (3d ed. 2013). Of course, Rule 18(a) is subject to the court's power to direct an appropriate procedure for trying the claims. *See* Fed. R. Civ. P. 42(b), 20(b),

21. Thus, even though Thompson has properly joined all of its claims against Hyman,[3] they may be severed if there is inconvenience "from trying two or more matters together which have little or nothing in common." Advisory Committee Notes to Fed. R. Civ. P. 18.

After considering the potential prejudice to the parties, possibility of juror confusion, and the resulting convenience and economy under the facts presented, the Court concludes that severance would not be appropriate. *See Wilson* 477 F.3d at 339. Thompson concedes that it may become necessary to bifurcate "if it is later determined that a single trial would lead to inconvenience and juror confusion." [Record No. 15, p. 3] However, Hyman has not shown that such concerns exist at this stage that require the remedy of severance and transfer. *See Compania Embotelladora del Pacifico v. Pepsi Cola Co.*, 256 F.R.D. 131 (S.D.N.Y. 2009) ("[T]he joinder of claims is strongly encouraged, and, concomitantly, severance should generally be granted only in exceptional circumstances.").

Hyman also argues that the separate nature of the three agreements necessitates severing the agreements into three separate trials, with three separate juries. But the limited information available to the Court at this time suggests otherwise. The contracts for the Sienna Plantation project and the Indian Lake Village Project — dated about two weeks apart — are nearly identical, with very similar terms, similar hand-written modifications, the same initials on each page, and signed by the same parties. [*Compare* Record No. 10-2 *with* Record No. 10-3.]

---

[3] Although Hyman does not argue that the claims were improperly joined, it states that it "takes no position on whether these claims were permissibly brought as a joint action in the first place." [Record No. 16, p. 3] A simple reading of Rule 18 — which allows a party to join all of its claims against an opposing party — indicates that the initial joinder was appropriate. Fed. R. Civ. P. 18; *see also* 7 Fed. Prac. & Proc. Civ. 1581 ("Rule 18 permits complete freedom of joinder in the single plaintiff-single defendant situation.")

Hyman argues that this facial similarity regarding the projects is likely to lead to jury confusion and resulting prejudice. And it argues that the parties would benefit from severing these claims from each other. Thompson disagrees, correctly pointing out that maintaining the single action at this time will save the parties the expense of "three sets of attorneys [] subject to three sets of discovery orders, three sets of deadlines, and three sets of status conferences and hearings." [Record No. 15, p. 4]

Hyman raises valid concerns regarding the convenience of maintaining the action in Kentucky. Because Thompson's principle place of business in Indiana and Hyman's is in Texas, "[n]one of the allegations, witnesses, or evidence regarding the Sienna and Indian Lake claims would be located in Kentucky." [Record No. 10-1] However, Hyman has not shown that this concern would be obviated by granting the relief it requests. Creating three actions in three separate venues means that some of the relevant witnesses would be located in the receiving venue, but some would not.[4] By maintaining the entire cause of action in this Court, some of the relevant witnesses will be located here (*i.e.*, those related to the Hamburg project), while others will be found in other venues.

In discussing the appropriateness of severance, courts have identified the following factors for consideration:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether

---

[4] For example, if the Court severed and transferred the Indian Lake Subcontract claim to the Middle District of Tennessee, some of the witnesses and documents would likely be located in Texas and Indiana.

> prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011).

Looking to the first consideration, Hyman argues that the claims do not arise out of the same transaction or occurrence because there are three separate subcontracts and each is applicable to a separate construction project. Although the claims do not appear to arise out of the same transaction, as stated above, there is overall similarity among the projects. For example, in each instance, Thompson maintains that it sent Hyman a "Notice of Default" in accordance with each contract, requesting that Hyman remedy the deficiencies in services. [Record No. 15, p. 2] In fact, the Notices of Default for the Hamburg Project and the Indian Lake Project were sent the same day (August 1, 2012), while the letters terminating the Hamburg Subcontract and Indian Lake Subcontract were sent on September 13, 2012.[5] [*Id.*] Considering the fact that the Sienna Plantation and Indian Lake projects are nearly identical in terms, the three contracts appear to be factually intertwined.

Hyman also argues that there was no "meeting of the minds," and thus no subcontract, regarding the Hamburg project. Whether there was a "meeting of the minds" regarding this project may depend on the parties' prior dealings. Further, the parties' prior dealings could be particularly relevant in determining the amount of damages, if any. In short, even if the Court grants the relief Hyman requests, the Indian Lake and Sienna Plantation projects will still be relevant to the remaining Hamburg project claim. Thus, the Court gives weight to Thompson's

---

5 It is unclear whether these notices and letters were sent together or separately.

assertions that the claims "will likely involve many of the same witnesses and legal issues."[6] [Record No. 15, p. 3] Given the similarity in time of the formation of the agreements, the alleged breaches, and the notices of default, it seems highly likely that there is significant factual overlap between the three agreements.

Hyman is correct that the law applicable in different jurisdictions will likely apply to the three subcontracts. It avers that under each state's law, it will have different counterclaims, "one of which involves its liens filing against the Texas project property, and potentially a foreclosure action [with respect to] that claim."[7] [Record No. 10-1, p. 5] But as other courts have recognized, severance is not required under such circumstances. *See Kimmel v. Cavalry Portfolio Servs., LLC*, 747 F. Supp. 2d 427, 435 (E.D. Pa. 2010). The *Kimmel* court found that there would be no prejudice to the parties by keeping the claims joined because the claims would be litigated either way, especially when viewed against the economy of a single action. *Id.* at 436 ("Because hearing the claims together in one action will help eliminate the unnecessary duplication of filing fees, discovery requests, and court documents, the Court declines to exercise its discretion pursuant to Rule 21 to sever the claims or order separate trials pursuant to Rule 42(b).").

---

[6] The Court agrees with the defendant that these arguments are non-specific and vague. [Record No. 16, p. 3] However, at this stage of the litigation, the defendant's arguments also lack specifics. For example, the defendant makes the blanket assertion that the projects "do not overlap *in any way* other than the identity of the general contractor (Plaintiff) and the identity of the particular subcontractor (Hyman)." [Record No. 16, p. 1] Such a broad statement seems improbable, given the timing of the notices of default and terminations of the contracts, as well as the overlap between the signing of the two contracts.

[7] Although the lien has been filed [Record No. 10-3], counterclaims have not.

Next, the third factor weighs against severance. Settlement is more likely if the three subcontracts are joined in a single case, rather than separated into three separate claims in three separate venues. And judicial economy would not be served by severing one claim into three, in three separate courts in Kentucky, Tennessee, and Texas. Thompson argues that requiring the parties "to litigate in three different forums three actions involving many overlapping issues and overlapping proof would result in inconvenience and unnecessary expense." [Record No. 15, p. 4] Further, it contends that litigating all three claims together will "streamline the discovery process, limiting needlessly repetitive and duplicative discovery that would result from proceeding in three separate actions in three separate forums." [*Id.*] The Court agrees. The interests of economy are not served by requiring three separate juries in a matter that could, with relative ease, be tried as one.

The final two considerations of prejudice and the differences in proof do not necessitate severance. Hyman admits that Thompson "will be forced into presenting its claims in succession (presenting the alleged issues with site A, followed by those with site B, followed by those from site C)." [Record No. 10-2, p. 5] Such a presentation is likely to cure the confusion resulting from presentation of three claims in one action. Of course, any presentation of evidence presents a risk of jury confusion. But even if the Court were to sever and transfer the claims, it is likely that in each separate trial, the parties would present evidence regarding the two (severed) agreements that are not at issue. Thus, while severance might lessen the possibility of confusion, it would not altogether eliminate it as a potential risk. However, well-designed jury instructions can reduce the potential for confusion of jurors and resulting prejudice under either

circumstance. *See, e.g., Jeanty v. Cty. of Orange*, 379 F. Supp. 2d 533, 549 (S.D.N.Y. 2005). Thus, this factor does not weigh heavily in favor of severance.

In summary, Hyman has not overcome the plaintiff's proper joinder of claims because it has not adequately demonstrated that it will be prejudiced by the joinder, nor has it shown that the issues "to be severed [are] so distinct and separable" that the subcontracts require three separate trials. *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482 (D.C. Md. 2007).

**B. Transfer**

The defendant asserts that the plaintiff did not fully address its request to transfer the case. However, it fails to recognize the deference given to the plaintiff's choice of venue. Generally, the burden is "placed on the party seeking transfer and a plaintiff's choice of forum is ordinarily entitled to considerable weight." *Id.* (citing *MSDG Mobile, LLC v. Am. Fed., Inc.*, No. 1:05-CV-123M, 2006 WL 515531, at *6 (W.D. Ky. Feb. 28, 2006)). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951). Additionally, "a motion to transfer venue under Section 1404(a) cannot be used simply to shift the inconvenience of litigation from the defendant to the plaintiff." *Copeland v. Choice Fabricators, Inc.*, 492 F. Supp. 2d 783, 789 (S.D. Ohio Sept. 19, 2005).

Where, as here, venue is determined to be proper, the defendant bears the burden of proving that the matter should be transferred to another district. Hyman's arguments regarding transfer are based on the assumption that the Court will sever the claims. However, neither party has identified the domicile of likely witnesses, the location of relevant documents, or the

availability of process to compel any unwilling witnesses to provide testimony. *See Cowden,* 2010 WL 715850, at *3. Notwithstanding these omissions, without severance, wholesale transfer of the action to Tennessee or Texas serves little purpose. Accordingly, the Court declines to transfer the action or claims to other districts.

**IV.**

For the reasons discussed above, it is hereby

**ORDERED** that the defendant's Motion to Sever Claims and to Transfer Venue [Record No. 10] is **DENIED**.

This 11th day of July, 2013.




**Signed By:**
***Danny C. Reeves*** DCR
**United States District Judge**